UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| DALLAS TEXAS MAYNARD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 19-096-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW SAUL, Commissioner of the | ) | **MEMORANDUM OPINION** |
| Social Security Administration, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The parties have filed cross-motions for summary judgment regarding Plaintiff Dallas Texas Maynard's challenge to the final decision denying his application for Social Security benefits. [Record Nos. 11, 15] Maynard asserts that the Administrative Law Judge's decision is not supported by substantial evidence because the ALJ failed to give proper weight to the evaluations and opinions of Dr. Thomas Smith, Dr. Megan Green, and Barry Adkins. [Record No. 11] He further contends that the ALJ erred by not finding that the combined effects of his impairments were of sufficient severity to meet a listed impairment in 20 C.F.R. part 404, Subpart P, Appendix 1. Conversely, the Social Security Administration ("SSA") asserts that its final decision is supported by substantial evidence. [Record No. 15]

I.   PROCEDURAL HISTORY

Maynard applied for Title XVI Supplemental Security Benefits ("SSI") on September 2, 2015, alleging a disability onset date of September 1, 1993. [Administrative Transcript, "Tr." 366] The SSA denied his application initially and upon reconsideration. [Tr. 108, 126] Maynard filed a written request for a hearing before an Administrative Law Judge ("ALJ").

[Tr. 146] The parties appeared telephonically for an administrative hearing on September 20, 2018. [Tr. 19] ALJ Michael Kopicki issued a written opinion following the hearing, concluding that Maynard was not disabled. [Tr. 16-28] The Appeals Council subsequently denied Maynard's request for review. [Tr. 5] Accordingly, Maynard has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. STATEMENT OF FACTS

Maynard was born in 1980 and dropped out of school in the 9th grade. [Tr. 43] While being educated, Maynard attended special education classes. [Tr. 44] Following his withdrawal, Maynard did not engage in lasting employment. Instead, he has spent much of his life incarcerated. In fact, Maynard is currently incarcerated at USP Atwater with a projected release date of April 1, 2024. *See* bop.gov/inmateloc (last visited May 4, 2020).[1] Maynard filed an application for benefits on September 2, 2015, alleging a disability onset date of September 1, 1993. [Tr. 366] He applied for benefits because he is unable to read, write, or stay focused, and due to alleged psychological problems. [Tr. 366, 290]

Barry Adkins, M.A., conducted a consultative psychological evaluation in 2007. [Tr. 498] Adkins concluded that Maynard had a full scale IQ score of 63, was highly deficient in

---

[1] In the intervening period of applying for benefits and appealing the decision, Maynard was charged with multiple crimes in Pikeville Criminal Action No. 17-005-KKC. He pleaded guilty to possession of explosive material by a convicted felon, in violation of 18 U.S.C. § 842(i)(1) and 18 U.S.C. § 844(a)(1). Maynard received a below guidelines range sentence of 108 months imprisonment. An individual is not eligible for SSI benefits for any month in which he was incarcerated. Social Security Admin., What Prisoners Need to Know, *available at* www.ssa.gov/pubs/EN-05-10133.pdf (last visited May 4, 2020). Additionally, an individual who is incarcerated for 12 months or longer loses his eligibility for SSI benefits, and a new application for benefits must be filed after release from incarceration. *Id.*

basic reading and math, and that he possessed mildly deficient functional skills. His diagnostic impression was that Maynard was mildly mentally retarded. [Tr. 502] He further found that Maynard tends to be impulsive, he is likely to learn slowly, and can be unpredictable. [Tr. 502] Adkins explained, however, that Maynard can understand and follow simple instructions. [Tr. 502] Adkins noted that Maynard did not appear to be entirely forthcoming and that it was unclear if the information he gave was completely accurate. [Tr. 500]

Megan Green, Psy.D., conducted consultative examinations in July 2011 and in December 2015. [Tr. 505] In 2011, after conducting her first psychological evaluation, Dr. Green concluded that Maynard suffered from borderline intellectual functioning based on the review of former psychological evaluations. [Tr. 506] She also found that Maynard suffered from anxiety and antisocial personality disorder. [Tr. 506] Green explained that Maynard has significant functional impairments but most of them are caused by his antisocial personality disorder. [Tr. 507] She noted that Maynard is capable of understanding, remembering, and carrying out simple instructions, but that his patterns of aggressive behavior may cause problems. [Tr. 507] Green also explained that Maynard would likely be capable of sustaining persistence and pace if he worked in an environment that requires completion of simple, repetitive tasks. [Tr. 507]

Green conducted a second psychological evaluation in December 2015. [Tr. 548] At that time, Green concluded that Maynard has substance abuse disorders, in reported remission, borderline intellectual functioning, and antisocial personality disorder. And she noted that Maynard was inconsistent in explaining his history. [Tr. 550-51] Green again concluded that Maynard would be capable of understanding, remembering, and carrying out simple instructions, but that he may experience mild difficulty in responding appropriately to

supervision and co-workers. [Tr. 551] Green also found that Maynard would likely be capable of sustaining adequate concentration, and persistence and pace for simple, repetitive tasks. [Tr. 551]

Maynard was involved in a car accident in September 2015 that caused a lumbar and cervical strain. [Tr. 667] Thereafter, he was treated for back and leg pain caused by the accident. An MRI conducted in December 2015 showed central disc protrusion, mild disc space narrowing, migrating central disc extrusion, and mild spinal stenosis. [Tr. 703]

Maynard sought treatment for low back pain and leg pain in January 2016 from Dr. Thomas A. Smith. [Tr. 553] He denied ever having back problems or pain before the car accident. Smith assessed a herniated lumbar disc, chronic pain, sacroiliac ligament sprain, radiculitis, chronic pain syndrome, hypertension, and insomnia. [Tr. 558] Smith concluded that the car accident caused the herniated disc and radicular pain the legs. [Tr. 559] Dr. Smith recommended that Maynard see a neurosurgeon and stop physical therapy.

Dr. Smith also completed a medical report on February 16, 2018.[2] [Tr. 723] He explained that there was positive tenderness and spasms to the lower back and that Maynard could only bend from waist while standing to 45 degrees. [Tr. 725] He diagnosed the same ailments from his previous visit with Maynard in January 2016. Smith noted that Maynard could not sit, stand, or walk for long periods of time and had to lie down very frequently – which could cause him to constantly miss work. [Tr. 727] Smith also explained that Maynard could not perform any work during which he would be exposed to vibrations, dangerous

---

[2] As the United States and the ALJ point out, Maynard was in custody on February 18, 2018. *See* Pikeville Criminal Action. No. 17-005-KKC at Record No. 72.

- 4 -

machinery or heights. [Tr. 733] Dr. Smith also concluded that Maynard had a disability rating of 18%. [Tr. 720]

State agency psychologist Mary K. Thompson, Ph.D., reviewed the record in January 2016. Based upon this review, Thompson concluded that Maynard has moderate difficultly maintaining social functioning and maintaining concentration, persistence, or pace. [Tr. 100] And she further concluded Maynard has mild restrictions in completing activities of daily living. She explained that Maynard would be able to understand and remember simple instructions after a brief initial learning period. Additionally, Thompson believed Maynard would be able to adapt adequately to situational conditions and changes with a reasonable support structure. [Tr. 105]

Curtis Gale-Dyer, D.O., conducted a consultative physical examination in February 2016. [Tr. 562] He concluded that Maynard had no physical limitations and his "only limiting factor appears at this time to be his pain." [Tr. 564] Dyer conducted testing and found that Maynard had full range of motion and did not complain of leg pain during testing. [Tr. 564]

Donna Sadler, M.D., reviewed the record and concluded that Maynard was physically capable of light work with some restrictions on postural activities and exposure to the environment. [Tr. 120] She noted that Maynard could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. [Tr. 118] Additionally, Dr. Sadler noted that Maynard could sit, stand, and/or walk for about 6 hours in an 8-hour workday. [Tr. 118] Sadler concluded that he had postural limitations due to back pain and that he had environmental limitations. [Tr. 119]

After multiple attempts, the ALJ conducted a telephonic hearing on September 20, 2018. [Tr. 19] Maynard testified during the hearing regarding his anxiety, depression, and

back pain. [Tr. 45-46] He explained he cannot be around people because of his "nerves" and he sleeps a lot. Maynard acknowledged that he receives Zoloft and Remeron. [Tr. 46] He testified, however, that he does not receive therapy or counseling and that he has never been hospitalized for psychiatric reasons. [Tr. 47] According to Maynard, he has no hobbies, cannot read or write, and does not have a driver's license. [Tr. 48-49] Additionally, Maynard stated he cannot pick up a gallon of milk without back pain and his left leg becomes numb from time to time. He explained he can only walk 400 to 500 feet without pain. The vocational expert testified at a prior hearing that Maynard would be able to perform the jobs of sorter, inspector, and housekeeping cleaner based on the hypothetical. [Tr. 74]

ALJ Michael J. Kopicki issued a decision on October 1, 2018, concluding that Maynard had not been disabled within the meaning of the Social Security Act since the date of filing his application for benefits. [Tr. 19] The ALJ also determined that Maynard had not engaged in substantial gainful activity since the application date. [Tr. 21] Further, he found that Maynard suffered from the following severe impairments: degenerative disc disease of the lumbar spine, depressive disorder, anxiety disorder, antisocial personality disorder, and borderline intellectual functioning. [Tr. 21] ALJ Kopicki concluded that Maynard did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 22]

He explained that Maynard has the Residual Functional Capacity ("RFC") to perform "light work" subject to the following limitations:

> The claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for six hours of an eight-hour workday with normal breaks and sit for six hours of an eight-hour workday with normal breaks. He can no more than occasionally climb ladders, ropes, or scaffolds, stoop, crouch, crawl, and kneel. He can frequently climb ramps and stairs. He

should avoid even moderate exposure to vibration and hazards, such as dangerous machinery and heights. He is also limited to understanding, remembering, and carrying out simple instructions involving routine and repetitive tasks. He should have no more than occasional contact with the public.

[Tr. 25]

The ALJ noted transferability of job skills was not an issue because Maynard does not have any past relevant work. ALJ Kopicki found that there are jobs that exist in significant numbers based on his age, education, work experience, and residual functional capacity. [Tr. 31] Finally, the ALJ concluded that Maynard had not been disabled since September 2, 2015, the date the application was filed. [Tr. 31]

### III. STANDARD OF REVIEW

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful

employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 416.920(e). If he can, he is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV. LEGAL ANALYSIS

### a.     Opinions of Dr. Smith, Dr. Green, and Adkins

Maynard argues that the ALJ's decision is not supported by substantial evidence because he failed to consider and give proper weight to the evaluations and opinions of Dr. Smith, Dr. Green, and Adkins. First, Maynard contends that the ALJ did not give proper weight to Smith's evaluations. ALJ Kopicki gave limited weight to the opinions of Smith from January 27, 2016, and February 16, 2018. [Tr. 29] The ALJ concluded that Smith's opinions did not specify how the claimant was limited in his impairments, how Smith reached his conclusions, and the evidence in the record did not generally support his opinions. "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. 404.1527(c)(3). Additionally, the ALJ noted that Smith's opinion was not generally consistent with the medical evidence. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." *Escandon v. Saul*, 2019 U.S. Dist. LEXIS 166271, at *26 (E.D. Ky. Sept. 27, 2019) (quoting 20 C.F.R. § 404.1527(c)(4)). Because Smith's opinion did not explain how he reached his conclusions and was not generally consistent with the medical evidence, ALJ Kopicki gave Smith's opinions limited weight.

Second, Maynard asserts that the ALJ failed to consider and give proper weight to the entirety of the opinions of Dr. Green and Adkins. He argues that their opinions support a finding that he met the criteria for Listing 12.05. The ALJ explained he gave less weight to the

opinion of Adkins because the opinion was rendered almost 8 years before the application date and was not clearly expressed in terms of function-by-function limitations. [Tr. 29]

ALJ Kopicki gave substantial weight to Dr. Green's opinions because she gave similar opinions after both of her examinations, she based her evidence on objective examination findings, and she reviewed multiple psychological evaluations. See 20 C.F.R. § 404.1527(c)(3). The ALJ explained that he found her opinion to be more persuasive than Adkins' opinion because it was more recent and based on a broader range of evidence. Additionally, he noted that Green's opinion was consistent with the state agency examiners.

In summary, ALJ Kopicki clearly considered and gave explanations for the weight he assigned to the opinions of Smith, Green, and Adkins. Accordingly, the ALJ did not err in his consideration of the opinions of Smith, Green, and Adkins.

### b. Listing Impairments

The ALJ must determine at step three whether a claimant is eligible for benefits based on an impairment or combination of impairments that meet or medically equal a listed impairment. Maynard asserts that the combined effect of his impairments were sufficiently severe to meet one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. He argues that he clearly meets the 12.05 criteria for "paragraph B." The ALJ considered Listings 1.04, 12.04, 12.05, 12.06, 12.08, and any other section of the listings. [Tr. 22] ALJ Kopicki evaluated Maynard's ailments and concluded that Maynard did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listings.

To meet a listing, a claimant "must point to specific evidence that demonstrates he could reasonably meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sullivan v. Zebley*, 493 U.S. 521,

530 (1990)). To meet the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations of functioning.

Maynard argues that the ALJ "cherry picked" portions of his medical records to determine that Maynard did not meet a listing. But the ALJ outlined why he gave limited weight to the opinion of Adkins and discussed how he concluded that Maynard did not meet a listing. In fact, the ALJ explained that Maynard had moderate limitations for understanding, remembering, or applying information and for concentrating, persistence, or maintaining pace. He noted that while Adkins had diagnosed Maynard with "mild mental retardation," later evaluations showed that he had borderline intellect and they showed intact attention and concentration. Additionally, ALJ Kopicki concluded that Maynard had a moderate limitation for interacting with others. While Maynard testified that he did not like to be around many people and did not leave his cell while in prison, he did explain that he hitchhiked and was cooperative and friendly during his consultative examinations. Further, the ALJ explained that Maynard had only a mild limitation for adapting and managing himself.

ALJ Kopicki detailed how he reached his conclusion for each limitation and what evidence he relied upon in determining Maynard's imitations. The ALJ concluded that Maynard did not have one extreme limitation or two marked limitations, meaning he did not meet a listing for his mental limitations. Moreover, Maynard did not identify which listing he believes he meets or how his back pain equaled the severity of a listing. He provided a conclusory argument that he met a listing for his back pain. *See Roberts v. Berryhill*, No. 17-254-HRW, 2018 U.S. Dist. LEXIS 193675, at *10 (E.D. Ky. Nov. 14, 2018). He does not provide any argument or support for how he meets *all* the requirements of any specific listing.

Accordingly, Maynard has not shown that the ALJ erred in determining that his impairments were not sufficiently severe to meet one of the listed impairments.

      **c.**     **Substantial Evidence**

If supported by substantial evidence, the Commissioner's decision must be affirmed, even if the reviewing court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Here, ALJ Kopicki considered the subjective complaints of Maynard, his treatment records, and the opinions of multiple medical professionals and consultative examiners in determining that Maynard was not disabled and in developing Maynard's residual functional capacity and corresponding limitations.

"The ALJ must set forth his or her supporting reasoning, based on the evidence in the record, to allow for meaningful judicial review." *Daniels v. Comm'r of Soc. Sec.*, No. 1:13CV1044, 2014 U.S. Dist. LEXIS 40960, at * 4 (N.D. Ohio March 27, 2014).  ALJ Kopicki explained why he discounted certain medical opinions and provided a thorough explanation for how he reached his decision.  He gave substantial weight to the opinions of Green, Gale-Dyer, Thompson, Adamo, and Sadler in determining Maynard's residual functional capacity and appropriate limitations.  He also explained that their opinions were consistent with each other and with the medical evidence.  He noted that there was very minimal treatment for Maynard's mental health impairments and the Kentucky Department of Corrections records indicated that he was capable of functioning within the general prison population. ALJ Kopicki's decision was supported by substantial evidence.

## V. CONCLUSION

For the reasons outlined above, it is hereby

**ORDERED** as follows:

1. Plaintiff Dallas Texas Maynard's Motion for Summary Judgment [Record No. 11] is **DENIED.**

2. Defendant Commissioner of the Social Security Administration Andrew Saul's Motion for Summary Judgment [Record No. 15] is **GRANTED.**

Dated: May 11, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky